[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 150.]

NEWFIELD PUBLICATIONS, INC., APPELLANT, *v.* TRACY, TAX COMMR., APPELLEE.

[Cite as *Newfield Publications, Inc. v. Tracy*, 1999-Ohio-312.]

*Taxation—Sales and use taxes—Exceptions—R.C. 5739.02(B)(15)—Series of machines in continuous operation which are integral and essential parts of the equipment used in placing juvenile and children's books, cards, and toys into packages are exempt from sales and use taxes.*

(No. 98-2150—Submitted June 22, 1999—Decided November 10, 1999.)

APPEAL from the Board of Tax Appeals, No. 96-K-91.

_____

{¶ 1} Newfield Publications, Inc., appellant, marketed and distributed juvenile and children's books, cards, and toys. Newfield sold this merchandise primarily to book club subscribers.

{¶ 2} In filling subscription orders, Newfield pulled the merchandise to be sent for the individual order from its inventory and packaged the order. Newfield applied a bar-coded label to the individual package that identified the bulk mail postal center through which Newfield would mail the package. Newfield placed the individual packages on conveyor equipment purchased from Automotion, Inc. and Almega Company. The conveyor equipment carried the individual packages to scanning machines and scales. Newfield had purchased the scanning machines from Accu-sort Company.

{¶ 3} The scanning machines read the individual packages' bar codes to determine the destination of each package, and the scales weighed the packages to determine the correct postage. The conveyor then delivered the individual packages to tilt-tray equipment purchased from the Danish company Kosan Crisplant a/s.

**{¶ 4}** The tilt-tray equipment, a type of conveyor, carried the individual packages, using the information obtained from the scanning machines, to a designated location in the system. Newfield placed bulk boxes—large, corrugated, cardboard boxes measuring four feet by four feet by seven feet high—at seventy-four locations along the tilt-tray conveyor. The tilt-tray conveyor dropped an individual package into a specific bulk box, as directed by the computer controlling the sorting operation. Newfield then loaded the filled bulk box onto a truck and transported the bulk box to the designated bulk mail center of the Postal Service.

**{¶ 5}** The Postal Service removed the individual packages from the bulk box and delivered the individual packages to customers. The Postal Service required Newfield to sort and handle the individual packages in this method; the Postal Service, to Newfield's benefit, delivered the individual packages at a reduced rate. According to the testimony, transporting the individual packages in a bulk box facilitated handling the individual packages. This also protected the packages from damage, as the packages would slide around the floor of the truck if not in the bulk boxes. The Post Office either reused the bulk boxes or discarded them if unusable.

**{¶ 6}** The Tax Commissioner, appellee, assessed use tax, for the audit period of April 1, 1991 through June 30, 1993, against the purchases of equipment from Automotion, Almega, Accu-sort, and Kosan. Newfield claimed exemption for this equipment under the packaging exemption, but the commissioner denied this claim. The commissioner, evidently, did not assess the purchases of bulk boxes.

**{¶ 7}** Newfield appealed this order to the Board of Tax Appeals ("BTA"). The BTA, in affirming the commissioner, applied the two-step test contained in *Custom Beverage Packers, Inc. v. Kosydar* (1973), 33 Ohio St.2d 68, 62 O.O.2d 417, 294 N.E.2d 672. The BTA found that, first, Newfield engaged in a qualifying enterprise under the packaging exemption and, second, that the bulk box was a

package because it restrained movement in more than one plane of direction. The BTA, however, ruled that the disputed equipment assisted Newfield in packaging the merchandise "as a device for transporting [Newfield's] packaged products to a mail center" and that this use did not satisfy the exemption.

**{¶ 8}** This cause is now before the court upon an appeal as of right.

_____

*Baker & Hostetler, L.L.P.*, *Edward J. Bernert* and *George H. Boerger*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Phyllis J. Shambaugh*, Assistant Attorney General, for appellee.

_____

***Per Curiam.***

**{¶ 9}** R.C. 5739.02(B)(15) sets forth the packaging exemption, and R.C. 5741.02(C)(2) applies this sales tax exemption to the use tax. R.C. 5739.02(B)(15) states:

"Sales to persons engaged in any of the activities mentioned in division (E)(2) or (9) of section 5739.01 of the Revised Code, to persons engaged in making retail sales, or to persons who purchase for sale from a manufacturer tangible personal property that was produced by the manufacturer in accordance with specific designs provided by the purchaser, of packages, including material and parts for packages, and of machinery, equipment, and material for use primarily in packaging tangible personal property produced for sale by or on the order of the person doing the packaging, or sold at retail. 'Packages' includes bags, baskets, cartons, crates, boxes, cans, bottles, bindings, wrappings, and other similar devices and containers, and 'packaging' means placing therein."

**{¶ 10}** In *Custom Beverage Packers*, we employed, after studying the statute, a two-step test to determine whether a purchase qualifies for the packaging exemption. At 33 Ohio St.2d at 73, 62 O.O.2d at 419, 294 N.E.2d at 675, we stated:

"An examination of that statute reveals that, in order to qualify for tax exception, the taxpayer must be engaged in an enterprise described in R.C. 5739.01(E)(2) [or (9)]. Second, the item for which exception is sought must meet the definition of 'packages' contained in R.C. 5739.02(B)(15), within that section, or must be equipment which operates on such an item."

{¶ 11} We then noted that the items named in R.C. 5739.02(B)(15) did not necessarily fully enclose the product packaged but did "restrain movement of the packaged object in more than one plane of direction." *Id.* Finally, we ruled that unbound pallets on which the taxpayer placed cases of beverages were not packages; the unbound pallets restrained movement of cases in only the downward direction.

{¶ 12} Newfield maintains that the BTA, after it had determined that Newfield's purchases passed the two-step test of *Custom Beverage Packers*, added an unwarranted third step, that Newfield needed to send the packages to a qualified destination. The commissioner argues that this equipment does not qualify for exemption because the function of the equipment is to weigh and sort already packaged products for mailing purposes. We agree with Newfield and reverse the BTA's decision.

{¶ 13} In *Cole Natl. Corp. v. Collins* (1976), 46 Ohio St.2d 336, 75 O.O.2d 396, 348 N.E.2d 708, we denied exemption because the items claimed to be packages, which were display cases and racks, functioned predominantly as a marketing aid. We ruled that an item that prevented movement in more than one plane of direction, under *Custom Beverage Packers*, was not a package if its predominant economic purpose was to facilitate the marketing of the taxpayer's products rather than to package the products. Thus, under *Cole Natl.*, we must determine whether the disputed item functions as a package.

{¶ 14} According to the Black's Law Dictionary (6 Ed.1990) 1108, "package" means:

"A bundle put up for transportation or commercial handling; a thing in form to become, as such, an article of merchandise or delivery from hand to hand. A parcel is a small package * * *. Each of the words denotes a thing in form suitable for transportation or handling, or sale from hand to hand. As ordinarily understood in the commercial world, it means a shipping package."

{¶ 15} Webster's Third New International Dictionary (1993) 1617, defines "package" as "3a: a covering wrapper or container * * * a protective unit for storing or shipping a commodity."

{¶ 16} Under these definitions, the function of a package is to contain a product for shipping or handling. The BTA found that the bulk boxes contained the individual packages and qualified as packages. The bulk boxes contained Newfield's products and facilitated shipping and handling of these products. We do not agree with the BTA that the bulk boxes did not qualify because they merely served as a device for transporting Newfield's packaged products to a mail center. Facilitating shipping and handling of products is the exact function and purpose of a package. We read exemption statutes strictly, *Natl. Tube Co. v. Glander* (1952), 157 Ohio St. 407, 47 O.O. 313, 105 N.E.2d 648, paragraph two of the syllabus, but we will not require more qualifications for an exemption than the General Assembly does. *Wheeling Steel Corp. v. Porterfield* (1970), 24 Ohio St.2d 24, 27-28, 53 O.O.2d 13, 15, 263 N.E.2d 249, 251.

{¶ 17} Moreover, under *Union Carbide Corp. v. Limbach* (1992), 62 Ohio St.3d 548, 584 N.E.2d 735, the equipment that conveys the products to be shipped to the packages for placement therein is exempt under the packaging exemption. As in *Union Carbide*, the disputed equipment in this case is a series of machines that are in continuous operation and are integral and essential parts of the equipment used in placing the products into packages.

{¶ 18} The instant system is unlike the system in *Ball Corp. v. Limbach* (1992), 62 Ohio St.3d 474, 584 N.E.2d 679, relied on by the commissioner. In *Ball*

*Corp.*, the conveyor system moved constructed cartons to workstations, where an employee inserted partitions, and then to a packaging station, where a packer placed the bottles into the cartons. Here, the equipment conveyed the products to the packages and placed the products in packages.

{¶ 19} Accordingly, we hold that the BTA's decision is unlawful and reverse it.

*Decision reversed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____